THE PEOPLE OF THE STATE OF NEW YORK ex rel. HECKER-JONES-JEWELL MILLING COMPANY, Appellant, *v.* EDWARD P. BARKER and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.

*Assessment for taxation of a foreign corporation — what proofs are conclusive — indebtedness not deducted — objections must be made to the assessors.*

Where proofs presented by a foreign corporation are full, uncontradicted and credible, and it does not appear that the commissioners of taxes and assessments had or acted upon any other information, a refusal of the commissioners to decide in accordance with such proofs amounts to legal error.

The proofs submitted by a foreign corporation to the commissioners of taxes and assessments to be used for the purpose of assessing the valuation of their personal estate within the State of New York are conclusive upon such corporation, and even if shown to be false, cannot be corrected by proof on a reference to reduce or cancel the assessment.

No grievance will be considered upon a proceeding, instituted to review the action of assessors in assessing the value of personal property of a foreign corporation, not urged upon the assessors in the application to them for the reduction and correction of the assessment under review.

It is within the right of commissioners of taxes and assessments to assess and tax all sums invested in any manner in the business of a foreign corporation in the State of New York, without giving such corporation credit for the indebtedness incurred in purchasing the assets or property going to make up the amount so invested.

APPEAL by the relator, the Hecker-Jones-Jewell Milling Company, from an order of the Supreme Court, granted at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of January, 1895, dismissing a writ of certiorari issued to review the action of the respondents in assessing

PEOPLE ex rel. HECKER MILLING CO. *v.* BARKER. 149

Hun.]                    FIRST DEPARTMENT, APRIL TERM, 1895.

the sum invested in business by the relator in the State of New York, for the purpose of taxation for the year 1894.

*John M. Bowers,* for the appellant.

*James M. Ward,* for the respondents.

O'BRIEN, J.:

The writ was sought under chapter 269 of the Laws of 1880, to review, vacate, set aside or modify the assessed valuation of the personal estate of the relator, levied by the commissioners of taxes of the city of New York for the year 1894, at the sum of $2,313,000. This amount was arrived at by the commissioners from a statement filed with them, in which the relator showed that it was a corporation organized under the laws of the State of New Jersey, having its principal office at Jersey City; and for the purpose of showing its condition for the purposes of assessment in this State it alleged that its total gross assets were $3,466,919, and its total liabilities $4,020,500.

Of the total gross assets there were, in the State of New York, at the said date, the following assets, and none other:

| | |
|---|---:|
| Real estate.................................... | $453,800 00 |
| Machinery and tools............................ | 600,000 00 |
| Mercantile stock, etc........................... | 1,669,650 00 |
| Office furniture............................... | 8,500 00 |
| Horses and trucks.............................. | 32,000 00 |
| Cash.......................................... | 2,912 90 |
| Total...................................... | $2,766,862 90 |

The commissioners instituted no inquiry to controvert the information furnished by the relator itself, but they justify their assessment upon the statement so furnished, and from the total assets as given deducted the assessed value of the real estate, viz., $453,800, holding that the balance, $2,313,060.90, was subject to taxation. It appeared that the machinery, tools, office furniture, horses and trucks were acquired in exchange for the stock and bonds secured by the mortgage issued by the corporation, the bonds amounting to $1,680,000; that its indebtedness, exclusive of mortgage liens, was $1,520,500, and that the mortgage liens more than covered the entire value of the property acquired by the issuing of mortgage bonds and stock.

The relator insists that the sum of $730,000 was the only sum ever invested by it in business in the State of New York; that all its other personal property within this State was obtained for its bonds and stock in the manner stated.

Further to analyze the statement would tend to prove that the relator on the date named was insolvent; but it is unnecessary to go into that question here, since the matter to be decided is the amount the relator has invested in business in this State. If the mortgage indebtedness and the indebtedness exclusive of the mortgage liens are just offsets, or if so much of it as was incurred in this State in the purchase of property is to be deducted, then it is evident that the conclusion of the commissioners is erroneous, because it does not appear that they had anything before them upon which to make the assessment other than the statement of the relator, or, as held in the case of *People ex rel. Edison Electric Illuminating Co.* v. *Barker* (139 N. Y. 55), where the proofs presented by the relator are full, uncontradicted and credible, and it does not appear that the commissioners had or acted upon any other information, a refusal of the commissioners to decide in accordance with such statement amounts to legal error. It appearing, therefore, that the commissioners did not act upon any other information than that furnished by the relator, they could not disregard such information and act capriciously or arbitrarily; and where, as here, they did not show that they had any different information, it will be presumed that their deductions were based upon that furnished. On the other hand, it has been held, in *People ex rel. German Looking Glass Plate Co.* v. *Barker* (75 Hun, 6), that the statement thus submitted is conclusive upon the relator, and cannot, even if shown to be false, be corrected by proof on a reference to reduce or cancel the assessment; and that case is also authority for the further proposition, which has been affirmed in many of these proceedings, that no grievance will be considered upon such a proceeding not urged upon the assessors in the application to them for the reduction and correction of the assessment under review.

This, we think, disposes of the claim made by relator that it was entitled to offer evidence showing how much of its indebtedness was due on account of the acquisition of its New York assets or incurred in the purchase thereof, it having made an application upon the

return of the writ to the court below to receive such evidence. It is true that section 4 of chapter 269 of the Laws of 1880 confers upon the court power to take evidence, or appoint a referee for that purpose, whenever it is necessary for the proper disposition of the proceeding. In this case, however, we think the testimony proposed to be offered by the relator tending to prove the indebtedness, if it was thereby sought to vary or contradict the statement made to the commissioners, was improper, and as we think will appear, upon a consideration of the question involved, wholly immaterial.

It is insisted by the relator that the sum invested in this State was the surplus of its assets in this State after deducting the indebtedness incurred by it in the acquisition of such assets. The statute under which the assessment was levied (Chap. 37 of the Laws of 1855) is in this language: " All persons and associations doing business in the State of New York as merchants, bankers or otherwise, either as principals or partners, whether special or otherwise, and not residents of this State, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of this State, and said taxes shall be collected from the property of the firms, persons or associations to which they severally belong." This has been construed in several recent cases, and whether they are controlling upon the questions here raised can be more clearly determined when we state the position assumed by the relator. In addition to the proposition already advanced we have the further claim that, on the face of the statement filed, the assessment could not have been made at a greater sum than $730,000, which it is claimed was the entire amount of cash capital ever invested in its business in the State of New York; that, without inquiry as to what proportion of its general indebtedness should be offset against its New York items, the assessment could not have been made at a greater sum, and that it was due to the error of the court below in refusing to permit evidence to be introduced showing how much of its indebtedness was on account of the acquisition of its New York assets, or incurred in the purchase thereof, that the assessment now claimed to be erroneous was made.

All these different propositions, however, at last resolve themselves down to the question whether or not it was within the right of the commissioners to assess and tax all sums invested in any

152 PEOPLE ex rel. HECKER MILLING CO. *v.* BARKER.

First Department, April Term, 1895.          [Vol. 86.

manner in the business of the relator in this State without giving it credit for the indebtedness incurred in purchasing the assets or property going to make up the amount invested in this State. This, as we understand it, was the precise question presented in *People ex rel. Thurber-Whyland Co.* v. *Barker* (141 N. Y. 118). There, as here, the relator was a foreign corporation and complained of the amount of its assessment because its indebtedness was not deducted therefrom. There the amount invested in this State, exclusive of imported goods in original packages (which were exempt from taxation), was stated to be $750,000, while it owed in New York city a total indebtedness of $1,218,904.42. Referring to chapter 37 of the Laws of 1855, the court says: " We are of the opinion that this act does not contemplate the deduction of debts from the sums invested in this State by non-residents. As the person is a non-resident, it is to be assumed that he will, at the place of his domicile, have all of what might be termed his equities adjusted, and that if entitled to it anywhere it will be at such domicile that he will claim and be allowed the right to have such deduction. * * * In a general way it may be said that he (that is, a resident) is to be charged with all his personal property; and from that total he may deduct his debts. This cannot be done in the case of a non-resident, although it may [as we may assume] be done at his domicile. All we are to do is to assess and tax the sum here invested, and the equities must, as we have said, be adjusted at the domicile of the person. The assessment of a domestic corporation is made after a deduction for debts, because its capital and surplus are to be assessed at their actual value, which cannot be arrived at without considering and deducting debts. A foreign corporation is not to be thus taxed, and no inquiry is made as to the actual value of such capital or surplus, and as such value is not to be assessed or taxed, the debts should not be deducted from specific property here invested."

In support of the view that the sum invested is to be regarded as the surplus after deducting the indebtedness, we are referred to the case of *Clark* v. *Bailey* (12 Blatchf. 156). There a statute of the United States was involved, which in many respects was dissimilar to the act of 1855, and even if there be some clashing between the two decisions, which we do not concede, we are bound,

in passing upon our own statute, to follow the construction that has been given to it by our highest court, which we think is the construction that would be given to it were that statute under consideration in the courts of the United States.

The claim advanced by the relator, that the sum actually invested in business in this State is only to be ascertained by deducting from the total gross assets invested in business in this State the debts of the corporation or the liens upon its investments in business within this territorial jurisdiction, we regard as having been finally disposed of by the Court of Appeals in *People ex rel. Thurber- Whyland Co.* v. *Barker (supra).*

The order appealed from, therefore, should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order affirmed, with costs.

---

, 86  153
|155a 674|

